## IN RE FLOYD KINSOLVING, Ex Parte.

**St. Louis Court of Appeals, Argued February 1, 1909, Opinion filed February 23, 1909.**

1. **DIVORCE: Judgment for Alimony: Imprisonment for Debt.** A decree of court directing the payment of a sum of money as alimony in a proceeding for divorce is a judgment for debt, and a party cannot be imprisoned for contempt of court in refusing to obey the decree for the reason that imprisonment for debt has been abolished in this State. [Following Coughlin v. Ehlert, 39 Mo. 285.]

2. ———: ———: ———: **Fraudulent Conveyance.** A defendant in a divorce proceeding who had been ordered by a decree to pay certain sums of alimony to his former wife, could not be imprisoned for contempt of court in refusing to obey the order on the ground that he had fraudulently conveyed his land in order to defeat the payment, the decree being for the payment of money and not for the delivery of a specific thing or the conveyance of the land.

Original Proceeding by Habeas Corpus.

PETITIONER DISCHARGED.

*Tribble & Smith* and *C. F. Schneider* for petitioner.

*T. R. R. Ely* and *W. S. C. Walker, contra.*

REYNOLDS, P. J.—The petitioner, alleging that he is illegally restrained of his liberty under and by virtue of an order issued out of the circuit court of Dunklin county, prays to be released. The case was heard on the petition, the return of the sheriff and on a paper submitted by Mrs. Isabelle V. Kinsolving. It appears from the record and papers submitted that in a suit for divorce, in Dunklin county, in which petitioner was plaintiff and his then wife, Isabelle V. Kinsolving, defendant, that a decree was entered by the circuit court of that county, awarding a divorce to the petitioner, plaintiff in the divorce proceeding, and further ordering that the defendant in that suit, Isabelle V. Kinsolving, retain the custody of the children, with

the right and privilege to the petitioner to see and associate with them upon all reasonable occasions, and further that the petitioner here pay to his former wife, the sum of $2,500, "as a part of and a condition to his decree of divorce, said sum to be paid to defendant within a reasonable time, payment thereof to be secured at once. It is further ordered, adjudged and decreed that plaintiff shall provide for the reasonable and proper support of the said children of plaintiff and defendant;" and that he pay to the attorneys for defendant in the divorce suit, the sum of $400 as part of the alimony *pendente lite* and as compensation for their services in behalf of the defendant, the costs of the prosecution being adjudged against petitioner, plaintiff in the divorce suit. It appears that afterwards the circuit court of Dunklin county issued an order, duly served on him, directing the petitioner to appear in court, "and show cause, if any he can show, why he should not be punished for a contempt of court in failing and refusing to abide by and obey the order and judgment of this court requiring him to maintain and support his minor children." On the hearing of this citation, it also appears by a recital in the record produced, that the court found that the petitioner was divorced from his wife at the May term of the court, 1902; that afterwards, at the November term, 1902, upon a hearing at which both parties plaintiff and defendant in the divorce case had appeared, that the court had made an order requiring the petitioner to pay the sum of $500 for the support of the minor children, then living with their mother, and that said sum had not been paid; that at a subsequent term of the court, the court, upon hearing both parties, had required petitioner to pay to his former wife the monthly sum of $45 for the support of the three minor children, and that no part of the sum had been paid by the petitioner. The court further found that petitioner "is financially able to pay the sums hereinbefore

ordered by the court and that he has not shown to the court any reason why he has not complied and why he should not comply with the previous order of the court." Whereupon the court ordered, that these matters appearing, that the petitioner be and is adjudged guilty of "contempt of this court by reason of his failure to obey the previous orders of this court as aforesaid, and because of the findings of fact set out above; and it is ordered and adjudged that said F. Kinsolving pay the lump sum of $3,000 to said I. V. Kinsolving for the support of said minor children in compliance with and in satisfaction of the said orders heretofore made as set out above, and that said payment be made forthwith. It is further ordered that said F. Kinsolving stand committed to the custody of the sheriff of Dunklin county, Missouri, to be by him confined until he shall purge himself of such contempt of court by compliance with the said order to pay the sum of $3,000 to said I. V. Kinsolving, for the purpose aforesaid, in satisfaction of the previous orders of this court, as aforesaid."

These various orders of allowance are copied into the record and need not be further set out here, it being sufficient to say that the court had apparently made them in due course and regularly. The return of the sheriff in this proceeding sets them up, along with the commitment, as justification. It should also be noted that it appears by duly certified copies from the record, that in answer to the citation issued against him by the circuit court of Dunklin county, the petitioner set up that he had not discharged the judgment of the circuit court, except part of it, because of his inability to comply with the order or judgment in full, that inability arising from the fact that in complying with the terms of the original judgment and order for the payment of the alimony which was entered at the time of the granting of the divorce to plaintiff, he was compelled to exhaust all of his property, both real and per-

sonal, except as stated therein, and that on account of his physical disability he had since that time been unable to practice his profession, that of. a physician and surgeon, and had been unable to accumulate sufficient property to pay the same; that the small amount of property remaining in his hands and belonging to him after paying the judgment rendered in the divorce suit was turned over and delivered to his former wife for the use of herself and children and that he has now no property or money out of which he can pay off and satisfy the order and judgment of the court. He attached to his answer a list of property which he claimed was then owned by him, consisting of two choses in action—judgments he had paid and in which he was one of the defendants.

When this case came on for hearing under the writ of *habeas corpus* in this court, the divorced wife, Isabelle V. Kinsolving presented her petition to this court, asking to be heard in opposition to the granting of the writ and in opposition to the discharge of the petitioner. In this petition she sets out the facts of the award of the alimony and of the citation against petitioner, and of his failure to pay off the alimony in full, and states that she is informed and believes the fact to be that the petitioner had conveyed all of his real estate soon after his decree of divorce from his wife to one Ruffin; that the property conveyed was worth $18,000, and was incumbered by a deed of trust for $9,000; that Ruffin paid nothing for the conveyance, and that he had conveyed the property to one Mrs. Anderson, who later became and is now the wife of the petitioner; that during all the time the title to the property was apparently vested in Ruffin, the rents had been collected and retained by Mrs. Anderson, now Mrs. Kinsolving; and Mrs. Isabelle Kinsolving offers to prove these facts, if permitted to interplead in the case. This interest in the realty and judgment was all petitioner appears to have and, as we understand the record, it was on the

alleged claim that the conveyance of the realty by petitioner was pretended and not actual, and that he was still the owner of it, that the learned judge of the circuit court based his finding that the petitioner "is financially able to pay the sums heretofore ordered by the court."

We have treated this petition of intervention, if it may be so called, as testimony introduced in the case and have stated it here, not in recognition of the regularity of such a proceeding, or in acknowledgment of any right of intervention, but in order that the facts claimed as a reason for the commitment of the petitioner may be fully understood, it having been claimed that these facts were in evidence before the circuit court of Dunklin county when the citation was heard and the commitment of the petitioner made and that on these facts the learned trial judge had acted in making the commitment.

At the hearing of the petition we were furnished with a very instructive paper, prepared by one of the circuit judges of this State, collating the decisions of the courts of other jurisdictions on the question of alimony, and all claimed to treat the allowance of alimony as not a judgment for a mere debt, the argument being that our State and one other State stand alone in treating it as a debt and in declining to imprison a party for failure to pay alimony awarded in a divorce proceeding. Whatever weight may be given to that argument elsewhere, we are precluded from yielding to it by the decision of our Supreme Court in the case of Coughlin v. Ehlert, 39 Mo. 285. That decision has settled the rule of law which we are bound to follow in this case and in all similar cases, that imprisonment for debt being abolished in this State, a party cannot be imprisoned as for a contempt of court in refusing to obey an order or decree directing the payment of a mere debt, such as is alimony, and that an order for the

mere payment of alimony is simply an order for the payment of money in discharge of a debt.

The Coughlin case has never been questioned on any proposition covered by it. On the contrary it has been referred to approvingly by this court, by the Kansas City Court of Appeals, by our Supreme Court and by the United States Circuit Court of Appeals of this, the Eighth Judicial Circuit. Thus, in Ex Parte Crenshaw, 80 Mo. 447, l. c. 456, on the proposition that a party cannot be imprisoned for contempt of court for refusing to obey an order or decree directing the mere payment of money, it is cited approvingly. In that case the petitioner's contempt consisted in the removal of and refusal to return certain fixtures in controversy in the suit.

In State ex rel. Ames v. Barclay, 86 Mo. 55, it is cited approvingly on the above proposition. The Crenshaw case, *supra,* as well as the Coughlin case are cited approvingly in Ex Parte Millett, 37 Mo. App. 76, the commitment in the latter case being justified because the petitioner had failed to deliver over certain specific assets shown to be in his possession and control.

In McMakin v. McMakin, 68 Mo. App. 57, it was quoted and approved, as we shall later note.

In the case In re Rosser, 101 Fed. 562, the United States Circuit Court of Appeals, of the Eighth Circuit, passing on a case which arose in this State under the United States Bankruptcy Law, in an opinion by Circuit Judge SANBORN, Judges CALDWELL and THAYER concurring, cites it approvingly (l. c. 566) on the proposition that "an order for the payment of money or the delivery of property, which is a part of the estate in bankruptcy, and which is in the control and possession of the party directed to pay or deliver it, at the time of the making of the order, is not an order for the payment of a debt, and a commitment to jail until such order is complied with is not imprisonment

for debt, under section 16, art. 2, of the Constitution of Missouri and section 8954 (now 4685) of the Revised Statutes of that State." The Coughlin and Crenshaw cases are both cited, *inter alia*, in support of this. The learned judge places this on the distinct ground that such an order, under such a state of facts, "is not an order for the payment of a debt;" hence not within the constitutional prohibition. So that on every occasion in which the decision in the Coughlin case has come before the courts construing our Constitution as to imprisonment for debt, it has been upheld, not always directly on the point now challenged, but without suggestion that threw doubt on any of the reasoning or conclusions in it.

It is sought to bring the case at bar within the Coughlin case, on the claim that it appears that this petitioner has conveyed his property to hinder, delay and defraud his creditors, and particularly to defeat the payment of this judgment for alimony and maintenance, and an expression of Judge HOLMES, who delivered the opinion in that case, to the effect that if it were shown "that the party had in his possession a certain specific sum of money, *or other things*, which he refused to deliver up under the order of the court for any purpose, it may very well be that his disobedience would be a contempt for which he might lawfully be imprisoned," is relied on as justifying the commitment, it being argued that the "other thing," which petitioner had refused to deliver up, was this land which he had conveyed in fraud of the decree. So it will be seen that in the case at bar it is, in effect, sought to set aside conveyances, or a conveyance, of real estate, and, restoring title to petitioner, make him, out of the land, satisfy the decree. If that could be done, then it would be in this case, in a case in which the grantee in the conveyance not only never was before the court but could not possibly be before it. Obviously, that conveyance cannot be attacked in this action. The pe-

titioner, by that conveyance put it beyond his power to control the property. Even if that conveyance to Ruffin was in fraud of the rights of the former wife, it can only be attacked directly and with proper parties before the court. On this state of facts, assuming them to be true, this right, if it exists, to attack a conveyance, does not bring the case within the reasoning or decision of the Coughlin case. We are not to be understood to hold that we can in *habeas corpus* go behind the finding of the trial court to the effect that petitioner had property with which to pay the judgment. We grant that, and place our decision on the broad ground that petitioner cannot be committed for failure to pay off the judgment.

But, failing to bring this within the Coughlin case, that part of the opinion which holds that a judgment for alimony is a debt, is attacked. The gravamen of the attack is placed, not on the constitutional proposition that imprisonment for debt is contrary to our Constitution—for all agree that it is—but on the proposition that alimony is not a debt, and that what is said as to that in the case is *obiter*.

Taking up the latter proposition first, we cannot agree that this part of the decision is *obiter*. Judge HOLMES distinctly says (l. c. 286) : "The party here was under no other contempt than that of refusing to pay the money which the court had ordered to be paid as alimony. As process against the body for the non-payment of a debt cannot now be issued, there would seem to be no means of putting a party in contempt for disobeying orders or decrees for the mere payment of money." He then distinguishes orders allowing alimony from orders requiring a party before the court, having in possession certain specific sums of money, or other things, which he refuses to deliver up when ordered. The learned judge concludes this part of the opinion that it is for disobedience to such orders as are last above referred to, that a party may be

punished for contempt, under the specific statutory provisions that where a judgment requires the performance of any other act than the payment of money and the party neglects or refuses obedience, that he may be punished by the court as for a contempt, by fine or imprisonment, or both, if necessary, by sequestration of property—referring to what is now section 796, Revised Statutes 1899. It is to this part of the opinion, and on the doctrine there announced, that the Coughlin case has been cited approvingly and followed in most of the cases we have before referred to. It strikes us that if any part of that opinion may be called *obiter*, it is this part of it, for it is a discussion of the law applicable to a class of cases other than those arising out of a judgment for alimony, and distinguishes such cases from those wherein the order is for the mere payment of money. Actually it is injected into the opinion by way of illustrating the distinction. It is the part of the decision most often referred to and always with approval, and may be said to be the settled and accepted law of this State on that proposition.

After concluding his illustration, Judge HOLMES, resuming consideration of the question as to whether a judgment for alimony creates a mere debt, says (l. c. 287) : "An order for the payment of alimony is simply an order for the payment of money. Imprisonment for debt is abolished in this State. We think this was an imprisonment for debt only, and the commitment was without authority of law." So that after having disposed of his illustration, properly injected into the opinion to distinguish orders which the court could make under section 796, the judge, returning to the proposition with which he opened up the case, and having cited Roberts v. Stoner, 18 Mo. 481, in support of the proposition that a sequestration merely to compel the payment of money cannot now issue, as imprisonment for debt is abolished, and showing in what cases sequestration is lawful, returns to and settles the ques-

tion be had before him, namely: can there be imprisonment for debt; is a judgment for alimony a debt; can there be sequestration or imprisonment for failure to pay alimony? The determination of these was not *obiter*, but the point in decision.

Nor are we compelled to rely entirely on our own conclusion that the decision in the Coughlin case settles and determines that a judgment for alimony is a judgment for a debt, and that that point is within that decision.

In McMakin v. McMakin, 68 Mo. App. 57, l. c. 60, the Coughlin case was accepted as an authoritative determination that "a judgment or decree for alimony is simply a judgment or decree for the payment of money. Imprisonment for the non-payment of such a judgment or decree, is imprisonment for debt, and imprisonment for debt . . . has been abolished in this State," citing the Coughlin case.

It is said, however, that the court can always change the order for alimony and maintenance and hence it is not a fixed amount or a certain or determined debt in amount. This is more specious than substantial. When the court does fix or determine it, it becomes certain for the amount fixed.

Eliminating from the discussion consideration of the constitutional inhibition against imprisonment for debt, our statute, in our judgment, has settled the matter beyond any room for even a doubt. Section 4685, Revised Statutes 1899, is: "No person shall be arrested, held to bail, or imprisoned, on any mesne process or execution founded upon any civil action whatsoever." That the action for divorce is a civil action goes without saying. In our State it is purely a statutory action. In this we differ from many of our sister States, in which it is treated as a suit in equity. Section 2926, Revised Statutes 1899, authorizing the award of alimony and maintenance in divorce cases enacts that the court, when a decree is adjudged, shall make such

order touching the alimony and maintenance of the wife, as from the circumstances of the parties and the nature of the case, shall be reasonable; may order defendant, when the wife is plaintiff, to give security for the alimony and maintenance—and upon his neglect to give the required security, or upon default of himself and his sureties, if there be any, to pay and provide such alimony and maintenance, "may award an execution for the collection thereof, or enforce the performance of the judgment or order by sequestration of property, or by such other lawful ways and means as is according to the practice of the court." Then providing for the alteration of the order from time to time, as to allowance of alimony and maintenance, the section concludes that "the court may decree alimony pending the suit for divorce in all cases where the same would be just, whether the wife by plaintiff or defendant, and enforce such order in the manner provided by law in other cases."

Section 2927 gives a general lien on the realty of the party against whom the decree may be rendered, "as in the case of other judgments," but when the alimony is decreed from year to year, the decree "shall not be a lien on the realty, as aforesaid, but an execution in the hands of a proper officer, issued for the purpose of enforcing such decree, shall constitute a lien on the real and personal property of the defendant in such execution, so long as the same shall lawfully remain in the possession of such officer unsatisfied. In lieu of the lien of such decree for alimony from year to year, it is hereby provided that the party against whom such decree may be rendered shall be required to give security ample and sufficient for such alimony; but where default has been made in giving such security, the decree for alimony from year to year shall be a lien as in case of general judgments."

135 App—41

By our Act of 1903 (Sess. Acts 1903, p. 240) the chapter relating to married women (chap. 51, R. S. 1899) was amended by adding a new section, as section 4327a, by which it is provided that no property shall be exempt from execution or garnishment on a decree for alimony or maintenance.

Consideration of these provisions leads us to the conclusion that, as regarded by our law-makers, a decree for alimony and maintenance, when made, is a judgment or decree for a debt—the amount fixed becomes a debt; it is a lien, as other judgments for debts are; it is collectible by execution; no property is exempt from levy under an execution to enforce it; and, under section 4685, of the Revised Statutes, to say nothing of section 16, of article 2, of our Constitution, there can be no imprisonment to enforce its payment.

This matter of enforcing payment of alimony, is not of like character of orders made by the court in the progress of the case, before final judgment, as illustrated in State ex rel. Dawson v. St. Louis Court of Appeals, 99 Mo. 216, where the Supreme Court recognized the right of the trial court to withhold a decree, until its orders are complied with. The allowance of alimony is, when made—whether changed or not, the end of the case; when allowed or fixed, the court is, for the time at least, through with the case, and all that remains is to collect it—and that by execution. So careful have our courts been in denying the power to punish for contempt when the contempt complained of was a failure to pay over a money demand, that even under a case brought under section 3227, Revised Statutes 1899, to discover property of the judgment debtor, our Supreme Court, in In re Knaup, 144 Mo. 653, has held that the courts of our State have no power to commit an execution debtor to jail, as being in contempt, because of his failure to obey an order of the court to deliver up bonds, notes and other personal property which the evidence shows he has on his person.

Doss v. Railroad.

On full consideration we are of opinion that the judgment for alimony and maintenance in this case is a judgment for the payment of money merely, collectible on execution, but not enforceable by commitment of the recalcitrant debtor to jail as for contempt for non-compliance and until he should comply with the order. Holding this view, we discharged the petitioner at the hearing and, on full examination, are satisfied that our conclusion was correct. All concur.